

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2884 | **DATE** | 7/10/2002 |
| **CASE TITLE** | Militello vs. Central States, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion for summary judgment is granted and plaintiff's motion for summary judgment is denied. Accordingly, judgment is entered in favor of defendants and against plaintiff. Plaintiff's motion to strike the affidavit of Mr. Nelson is also denied. Any other pending motion in this case is terminated as moot. Enter Memorandum Opinion and Order.

(11) ☑ [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | 4/4 |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| MPJ | courtroom deputy's initials | 02 JUL 10 PM 2:30 | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
JUL 11 2002

ANTHONY J. MILITELLO, )
)
        Plaintiff, )
)    JUL 11 2002
v. )
)
CENTRAL STATES SOUTHEAST AND )
SOUTHWEST AREAS PENSION FUND )   No. 01 C 2884
and THE BOARD OF TRUSTEES OF )
THE CENTRAL STATES SOUTHEAST )
AND SOUTHWEST AREAS PENSION )
FUND, )
)
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Anthony Militello was a truck driver whose employer made pension contributions to Central States Southeast and Southwest Areas Pension Fund ("the Fund"), a multi-employer pension plan as defined by ERISA, 29 U.S.C. §§ 1002(2)(A) and (37). The Fund terminated Mr. Militello's benefits and sought repayment of benefits paid when it determined that he was engaged in "prohibited reemployment" under the pension plan. Mr. Militello sues the Fund under ERISA, challenging the denial of benefits as an unlawful and nonuniform interpretation of the pension plan. The Fund moves for summary judgment, and Mr. Militello brings a cross-motion. I grant the Fund's motion and deny Mr. Militello's.

I.

Mr. Militello was a truck driver at Alco Express until he

44

retired in 1996, for health reasons, at age 53. Alco Express contributed to the Fund on Mr. Militello's behalf, and when Mr. Militello retired, he sought pension benefits from the Fund. Mr. Militello told the Fund that he was retiring from active driving but that he owned trucks and trailers. Admin. Record at CS 0009.[1] The pension plan provided for suspension of pension benefits for any pensioner engaged in "prohibited reemployment," § 4.13(a), which is defined to include "[e]mployment in any position, including a managerial or supervisory position and including self-employment, . . . in the same industry in which the Participant or Pensioner earned any Contributory Service Credit while covered by the Pension Fund." § 4.13(g)(3). Alco Express advised the Fund that Mr. Militello owned equipment that he leased to a trucking company, but stated that he did not have any control over the drivers of the equipment. CS 0033. The Fund granted his request for pension benefits and began paying $2,600 per month effective April 1, 1996.

In November 1997, the Fund was told by a local union representative that Mr. Militello was running a non-union trucking business and that he employed his son as a driver. The Fund investigated, told Mr. Militello that he had been accused of being the self-employed owner of a trucking company, and asked him to provide information about the company and a complete copy of his

---

[1] Citations to the administrative record appear in the following form: "CS ____."

2

1996 federal income tax returns. CS 0069. Mr. Militello responded that he had no day-to-day duties, and that he leased all of his trucks to a company called American Motor Lines, which paid and hired all of the drivers. CS 0068. Mr. Militello submitted copies of lease agreements with American Motor Lines, several of which stated that American Motor Lines, as lessee, would be responsible for hiring drivers. CS 0013, CS 0016-21. Mr. Militello's federal tax returns listed business income and expenses for a principal business described as "trucking" and with the business name of "Anthony Militello." CS 0047. Included among the expenses were $98,792 for "fuel" and $21,390 for a "driver bonus." CS 0048. The Reemployment Committee of the Fund concluded that Mr. Militello had engaged in prohibited reemployment as the owner of Anthony Militello Trucking, based on the determination that he was engaged in work using the same skills that he had used while working for a contributing employer. CS 0035. The Fund advised him that his benefits would be suspended if he did not terminate his employment with Anthony Militello Trucking within 30 days. *Id.*

Mr. Militello appealed to the Benefits Claim Appeals Committee, which affirmed the decision of the Reemployment Committee, stating that his ownership of Anthony Militello Trucking was prohibited reemployment. CS 0032. Mr. Militello exhausted his administrative appeals by taking his claim before the Board of Trustees. The Board of Trustees also concluded, based on all of the

3

information submitted, which included Mr. Militello's tax returns, that his ownership of Anthony Militello Trucking was prohibited reemployment. CS 0003-04. Mr. Militello sues under ERISA, 29 U.S.C. § 1001 *et seq.*, claiming that the suspension of his benefits and the Fund's attempt to recover overpayment of benefits is unlawful.

II.

Both parties move for summary judgment, which is proper only when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On cross-motions for summary judgment, I give separate consideration to the evidence of each party and the inferences to be drawn from it. *See Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685, 692 (7th Cir. 1998).

The default standard of review for a denial of pension benefits is *de novo*, but "[w]here the plan gives the administrator discretion to interpret the plan terms or determine benefits eligibility courts review the denial of benefit claims under ERISA, 29 U.S.C. § 1132(a)(1)(B), using the arbitrary and capricious standard." *Carr v. Gates Health Care Plan*, 195 F.3d 292, 294 (7th

4

Cir. 1999) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).

There are no "magic words" necessary to trigger this deferential review, but the plan must "make reasonably clear that the plan administrator is to exercise discretion." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 331 (7th Cir. 2000). Here the pension plan gives the Board of Trustees the authority to administer the trust in accord with the Trust Agreement, Plan § 7.01, which states that "[t]he Trustees are vested with discretionary and final authority in construing plan documents of the Pension Fund." Trust Agreement Art. IV § 17. I previously held that this language was sufficient to trigger deferential review, *see* Minute Order of Jan 14, 2002, and noted that, although Mr. Militello "d[id] not concede" that deferential review was appropriate, he had provided no basis for concluding otherwise. He now argues that *de novo* review is appropriate because the Fund's trustees failed to exercise their discretion because their decision was conclusory, contained no analysis, and merely rubber-stamped the decision of the Benefits Claim Appeals Committee. He cites *Gritzer v. CBS, Inc.*, 275 F.3d 291 (3d Cir. 2002), but there the administrator had never even issued a decision, so court held that, where there was no analysis at all to which it could defer, the plan administrator had forfeited the right to use its discretion. *Id.* at 295-96. Here, however, where there was an exercise of

discretion, Mr. Militello must demonstrate that it was exercised arbitrarily and capriciously.

Under the arbitrary and capricious standard,

> a plan administrator's decision should not be overturned as long as (1) "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome," (2) the decision "is based on a reasonable explanation of relevant plan documents," or (3) the administrator "has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem."

*Hess v. Hartford Life & Acc. Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001). Where an application was given genuine consideration, deferential review "is limited to the evidence that was submitted in support of the application for benefits, and the mental processes of the plan's administrator are not legitimate grounds of inquiry . . . ." *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982 (7th Cir. 1999).

### III.

I begin with the Fund's motion. Mr. Militello argues that the suspension of his benefits was based on an unlawful and nonuniform interpretation of the pension plan in violation of 29 U.S.C. § 1132(a)(1)(B), that he was not provided adequate notice of the reasons for his suspension under 29 U.S.C. § 1133(a), and that the suspension of his benefits violated 29 U.S.C. § 1053.

#### A.

Under § 1132(a)(1)(B), I must determine whether the Fund's determination that Mr. Militello was engaged in "prohibited

6

reemployment" under § 4.13(g) was reasonable and supported by the evidence in the administrative record. The Fund was informed by a local union that Mr. Militello was operating a trucking company and that he employed his son as a driver. Mr. Militello denied that he did anything more than lease vehicles to a third party, and he provided copies of the lease agreements, but his tax returns showed that he paid nearly $100,000 for fuel and more than $20,000 as a "driver bonus." CS 0048.

Mr. Militello argues that this was an inconsistent and "nonuniform" interpretation because it reversed the Fund's previous determination that mere ownership of his trucks was "ok to accept for [the] purpose of retirement." CS 0033. A nonuniform interpretation may be arbitrary and capricious, see *Russo v. Health, Welfare & Pension Fund, Local 705, Int'l Bhd. of Teamsters*, 984 F.2d 762, 766 (7th Cir. 1993), but here the facts, as known by the Fund, had changed. When Mr. Militello applied for pension benefits, the Fund only knew that he owned the vehicles and was leasing them, but was told that he did not exercise any control over the drivers. CS 0033. The Fund reasonably concluded, on the basis of the information from the local union and Mr. Militello's tax return, that he was actually operating a trucking business and paying drivers. If he had been leasing the trucks to another company that operated them, he would not have incurred anything in driver expenses or much at all in the way of fuel expenses. Even if

7

he was not driving the trucks himself, management of a trucking business would qualify as "prohibited reemployment" under § 4.13(g) of the pension plan. The Fund's reversal of its prior determination was not a "nonuniform" interpretation.

Mr. Militello argues that the information from the local union was hearsay, but "[a] pension or welfare fund trustee or administrator is not a court [and] is not bound by the rules of evidence." *Karr v. National Asbestos Workers Pension Fund*, 150 F.3d 812, 814 (7th Cir. 1998). He also argues that the Fund improperly requested and considered his personal income tax returns. Department of Labor regulations for 29 U.S.C. § 1053 provide that "[a] plan may provide that an employee must notify the plan of any employment. A plan may request from an employee access to reasonable information for the purpose of verifying such employment." 29 C.F.R. § 2530.203-3(b)(5). Mr. Militello cites an agency discussion of this regulation, Department of Labor, *Rules and Regulations for Minimum Standards for Employee Benefit Plans; Suspension of Benefit Rules*, 46 Fed. Reg. 8894, which states that the Department of Labor would not consider a request for a complete copy of a personal income tax returns to be "reasonable." *Id.* at 8902. This is an informal agency interpretation of a regulation. Agency rules and regulations with the force of law are entitled to deference, but

> informal agency interpretations such as those contained in "opinion letters ... policy statements, agency manuals, and

enforcement guidelines, all of which lack the force of law--do not warrant *Chevron*-style deference." Nevertheless, given the specialized experience and broader information available to such an agency, these informal interpretations are "entitled to respect" to the extent that they have the "power to persuade."

*American Fed'n of Gov't Employees v. Rumsfeld*, 262 F.3d 649, 656 (7th Cir. 2001) (citations omitted).

Mr. Militello argues that this discussion makes the Fund's request for and consideration of his personal income tax return unlawful. However, even if I deferred to the Department of Labor's point of view, the discussion in its entirety does not support Mr. Militello's position. The Department of Labor states that it would be unduly intrusive to ask for a personal income tax return, which mostly contains information that is irrelevant to verification of employment, when the administrator could easily get the same information from tax withholding statements without considerable expense of resources. 46 Fed. Reg. at 8902. Here the allegation was that Mr. Militello was self-employed and received no wages, so there would be no tax withholding statements. Under the circumstances, his personal tax returns contained highly relevant information, which could not have otherwise obtained without imposing an inordinate burden on the Fund. The intrusion on Mr. Militello's privacy was not unreasonable. The Fund reasonably requested and considered his personal tax returns to determine whether he was engaged in "prohibited reemployment."

Mr. Militello also argues that Fund did not specify what

9

portion of the expenses on his 1996 tax returns, if any, were attributable to prohibited employment that began, at the earliest, when he retired in April of 1996. However, even if I credit Mr. Militello's argument, which seems to be that those expenses were attributable to pre-retirement employment, it was not unreasonable to view the tax returns, which reflected more than $120,000 of expenses suggesting that he was actually operating a trucking business, as establishing prohibited employment after April 1996.

Finally, Mr. Militello argues that the Fund ignored the evidence that he provided that showed that he was *not* employed in the trucking business. For example, he says that his tax returns demonstrated that he paid no wages or salaries,[2] and he produced leases, some of which imposed the responsibility of hiring and paying drivers on the lessee, American Motor Lines. But arguments about the sufficiency of the evidence cannot demonstrate arbitrariness or capriciousness where there is evidence in the record that supports the plan administrator's reasons. *See Exbom v. Central States, S.E. and S.W. Areas Health and Welfare Fund*, 900 F.2d 1138, 1144 (7th Cir. 1990) (holding that existence of conflicting evidence in record was not reason to find plan administrator's decision, which was supported by other evidence in

---

[2] The Fund argues that he actually left these spaces blank on his tax returns, rather than filling in "zero," and that he does not actually show that he paid *no* wages. Taken in the light most favorable to Mr. Militello, however, this is evidence that he paid no wages or salaries.

10

record, was arbitrary and capricious). I cannot reweigh the evidence where the record supports the Fund's decision as reasonable. *See id.* The Fund's interpretation of the plan and its decision that Mr. Militello was operating a trucking business as well as its conclusion that the business constituted "prohibited employment" were not arbitrary and capricious.

B.

ERISA requires every employee benefit plan to provide notice of a denial of benefits, "setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant." § 1133(1). The regulations interpreting this statute require a notice of adverse benefit determination to include:

> (i) The specific reason or reasons for the adverse determination;
> (ii) Reference to the specific plan provisions on which the determination is based;
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; [and]
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review . . . .

29 C.F.R. § 2560.503-1(g)(1). Mr. Militello argues that he did not receive this notification as soon as the Fund received the information from the local union, but the statute and regulation require that he receive notice of an adverse *determination*, not of the commencement of the investigation. The February 5, 1998, letter

11

notifying Mr. Militello of the Reemployment Committee's decision to suspend his benefits, CS 0035, conformed to these requirements.

All of the Fund's decisions stated that the reason they were suspending Mr. Militello's benefits was that his ownership of Anthony Militello Trucking constituted "prohibited reemployment" because it was work, "in any capacity," using the same skills in the same metropolitan area as he did when he was employed, and that to prevent the suspension, he would have to give up his ownership of Anthony Militello Trucking. *See* CS 0035, 0032, 0002-04. Mr. Militello argues that, because none of the Fund's decisions specifically refer to his tax returns, or to the specific evidence that the Fund considered in reaching this conclusion, the Fund did not provide the "specific reasons" required by § 1133(1). The justification based on the tax return, he says, is a "post hoc attempt to furnish a rationale" for the denial of his benefits. *See Halpin v. W.W. Grainger, Inc.*, 982 F.2d 685, 696 (7th Cir. 1992). In *Halpin*, the administrator's letter simply stated that the pensioner was no longer totally disabled, but did not explain why. *Id.* at 692. The court held that this was a "[b]are conclusion[]" that was insufficiently specific to provide the administrator's rationale. *Id.* at 693. The court also said that "the sending of the file, without sufficient indication of what parts of the file the [administrator] relied on or rejected, does not repair the inadequacy."

12

Here, however, there was no inadequacy to repair. The Fund's decisions state both a conclusion--that Mr. Militello was engaged in "prohibited reemployment"--and a reason--that he was employed as the owner of Anthony Militello Trucking. "The administrator must give the 'specific reasons' for the denial, but that is not the same thing as the reasoning behind the reasons, in this case, the interpretive process that generated the reason for the denial." *Gallo v. Amoco Corp.*, 102 F.3d 918, 922 (7th Cir. 1996) (citations omitted). Although the Fund cannot introduce new facts, outside the administrative record, to justify the decision, it can "defend [its] interpretation with any arguments that bear on its rationality." *Id.* at 923. The Fund does not introduce new facts; it merely points to the evidence in the administrative record that supports its reason for suspending benefits. Mr. Militello says that he was not provided with the administrative record at the time of the denial, but the Fund "is not limited to repeating what [it] told the applicant." *Id.* Specific reasons must be supplied so that the applicant can adequately challenge the decision, *Halpin*, 962 F.2d at 689; *Gallo*, 102 F.3d at 923, and Mr. Militello was able to do so here.

The Fund has a three-step administrative process for benefits claims: step one is review by the Benefits Claim Review Committee, Step two is by the Benefits Claim Appeals Committee, and step three is by the Board of Trustees. Pension Plan App. B, at CS 0158. Mr.

13

Militello says that he was denied review at the initial level because his claim was heard by the Reemployment Committee, not the Benefits Claim Review Committee. In reply, the Fund submits an affidavit of Albert E. Nelson, its Benefits Director, in which he states that the Reemployment Committee is the "functional equivalent" of the Benefits Claim Review Committee, but it is more specialized. Reply Ex. A ¶ 9. Mr. Militello objects that this is new evidence introduced in reply, but the Fund introduced it to rebut Mr. Militello's claim that he had been denied access to the first step of the administrative process. *See Beck v. University of Wisc. Bd. of Regents*, 75 F.3d 1130, 1134 n.\* [sic] (7th Cir. 1996) ("'[W]here the reply affidavit merely responds to matters placed in issue by the opposition brief and does not spring upon the opposing party new reasons for the entry of summary judgment, reply papers--both briefs and affidavits--may properly address those issues.'" ). His objection did not include any evidence to rebut the facts in Mr. Nelson's reply affidavit, so I take those facts as true for the purpose of the Fund's motion.

Mr. Militello also objects to the affidavit of Mr. Nelson offered in support of the Fund's motions, but mostly he disputes the effect of the evidence, rather than Mr. Nelson's competence to offer it. He does object to Mr. Nelson's designation of the "record on review," arguing that it is not a matter within Mr. Nelson's personal knowledge, but as Benefits Director, he is the custodian

of the records and documents maintained in the applications of pension benefits, Ex. A ¶ 5, and he states that the record that he attaches is "a true and accurate copy of the Minutes of the Pension Group Trustees' meeting of June 10, 1998," *id.* ¶ 26. Mr. Militello submits certain other documents which his attorney says were found in the Fund's files, but he submits no basis for determining that those additional documents were part of the minutes of the Trustees' meeting. I conclude that Mr. Nelson is competent to testify about the contents of the administrative record, and I accept the Fund's version of the "record on review." *See Whisman v. Robbins*, 810 F. Supp. 936, 941 (S.D. Ohio 1992), *rev'd on other grounds,* 55 F.3d 1140 ("[T]he Nelson affidavit demonstrates that he is in a position to verify what evidence was actually considered by the Trustees when they reached their decision to suspend [the applicant]'s retirement benefits."). Mr. Militello's motions to strike the affidavits of Mr. Nelson are denied, and his procedural claims are without merit.

C.

Finally, Mr. Militello argues that the suspension of his benefits violates 29 U.S.C. § 1053, which states that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age." § 1053(a). Mr. Militello admits that the "normal retirement age" is sixty-five, *see* Resp. to Stmt. of Facts. ¶ 16,

15

and that he was only fifty-three when he retired in 1996, *id.* ¶ 20. On its face, then, § 1053 does not apply to Mr. Militello because he has not attained normal retirement age. *See Whisman v. Robbins*, 55 F.3d 1140, 1146 (6th Cir. 1995) ("[W]ithout running afoul of § [1053](a), Central States need not have placed any conditions on the forfeiture of benefits for participants who become reemployed prior to reaching normal retirement age."); *Chambless v. Masters, Mates & Pilots Pension Plan*, 571 F. Supp. 1430, 1440-41 (S.D.N.Y. 1983) (holding that neither 29 U.S.C. § 1053(a) nor 29 C.F.R. § 2530.302-3(c) applies to early retirement benefits for applicants who have not reached normal retirement age). I therefore need not consider Mr. Militello's argument that self-employment is not a basis for suspension of benefits under 29 C.F.R. § 2530.203-3(c)(2) because it speaks of "service," which is elsewhere defined as "performance of duties for the employer."

IV.

Mr. Militello's motion for summary judgment raises identical arguments, save one, to those he raises in his response to the Fund's motion. Because I conclude that, even viewing the facts in the light most favorable to him, he cannot prevail on those arguments, he cannot possibly meet the standard for summary judgment in his favor.

I consider separately his argument that the Fund may not recoup the $75,400 in benefits paid to him during his prohibited

16

reemployment. He argues that recoupment is unlawful because it does not comply with 29 C.F.R. § 2530.203-3(b)(5). First, he does not explain this argument at all in his motion, so he has waived it. *See United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Even if I consider the argument, however, § 2530.203-3(b)(5) provides no assistance. That section states the procedure for requiring verification of employment status and for the forwarding of benefits withheld pending the receipt of verification, "except to the extent that payments may be withheld and offset pursuant to other provisions of this regulation." The offset sought by the Fund from payments that Mr. Militello will receive in the future is unrelated to benefits withheld pending verification; it is to compensate for benefits paid in error during Mr. Militello's period of "prohibited reemployment." The pension plan provides that the failure to notify the Fund of reemployment obligates the pensioner to repay any benefits received during the period of "prohibited reemployment." Pension Plan § 4.13(c), (m). The Fund may offset future benefit payments by the amount of benefits collected during a period of prohibited reemployment. *See* 29 C.F.R. § 2530.203-3(b)(3). The offset is appropriate, so Mr. Militello's motion for summary judgment is denied.

V.

I GRANT the Fund's motion for summary judgment, and DENY Mr. Militello's motion for summary judgment. Mr. Militello's motion to strike the affidavit of Mr. Nelson is DENIED.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: July 10, 2002